### In the Matter of C.G. CHARTIER CONSTRUCTION, INC., Debtor.

### Civ. A. No. 90-2973.

United States District Court,
E.D. Louisiana,
New Orleans Division.

Jan. 14, 1991.

Richard John Tomeny, Jr., Metairie, for petitioner.

Monica T. Surprenant, Baldwin & Haspel, Metairie, Edward Thomas Suffern, Jr., Middleberg, Riddle & Gianna, New Orleans, for respondent.

HEEBE, Chief Judge.

On October 30, 1989, the Debtor, C.G. Chartier Construction, Inc., "Chartier," filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District of Louisiana. On November 21, 1989, Pelican Homestead and Savings Association, "Pelican," a creditor of Chartier, filed a motion for Adequate Protection and Sequestration of Rents. The motion sought to prevent Chartier's use of the rents accruing from the property securing its indebtedness. After a hearing on the matter, the bankruptcy judge held that Pelican had activated its security interest in the rents and revenues on November 21, 1989, and as such, the proceeds from the rents and revenues are Pelican's cash collateral. The bankruptcy judge further held that Pelican was entitled to adequate protection and sequestration of the rents. The Debtor, Chartier, has now appealed the order of the bankruptcy court entered on July 19, 1990.

1. In its brief, the Appellee, Pelican, made a request for oral argument. The Court finds that the briefs submitted by both parties are com-

The Court, having reviewed the transcript and the bankruptcy record, and having studied the legal memoranda submitted by the parties and the law, is now fully advised in the premises and ready to rule.[1] Accordingly,

IT IS THE ORDER OF THE COURT that the order of the bankruptcy judge entered on July 19, 1990, granting Pelican's motion for adequate protection and sequestration of rents, be, and the same is hereby AFFIRMED.

IT IS FURTHER THE ORDER OF THE COURT that this matter be REMANDED to the Bankruptcy Court for the Eastern District of Louisiana to determine the method and amount of adequate protection that is appropriate.

REASONS

*Facts*

On or about January 16, 1984, the Debtor, Chartier, executed a collateral mortgage in the amount of $1,500,000 in favor of Gulf Federal Savings Bank, "Gulf Federal." The collateral mortgage secured a loan made by Gulf Federal to the Debtor for acquisition of land and construction of an office building located at 3525 Hessmer Avenue, Metairie, Louisiana. The collateral mortgage contained a rental assignment clause. Additionally, the Debtor executed in favor of Gulf Federal, an Assignment of Rents and Leases dated April 19, 1985, and a Collateral Assignment of Rents and Leases dated November 16, 1987. These assignments were given as additional security to help shield the mortgagee, Gulf Federal, from a default by the mortgagor, Chartier.

The parties provided in the collateral mortgage that the mortgage shall be equal to a vendor's lien and shall have priority over all other liens, privileges, encumbrances and mortgages on the property. Further, in the Collateral Assignment of

plete, and therefore denies the request for oral argument.

Rents and Leases dated November 16, 1987, Chartier agreed:

> ... not to execute any other assignment of lessor's interest in said Leases or assignment of rents arising or accruing from said Leases or from the property; not to subordinate said Leases to any mortgage or other encumbrance or permit, consent or agree to such subordination without Gulf Federal's prior written consent ...

On or about December 30, 1987, Gulf Federal Savings and Loan Association, successor in interest to Gulf Federal Savings Bank, merged with Pelican Homestead and Savings Association. Pelican is now the holder of the collateral mortgage, and the assignments of rents and leases securing Chartier's indebtedness.

The Debtor, Chartier, was unable to make the payment on the note due September 30, 1989 and therefore, was in default according to the terms of the collateral mortgage. (*See* Collateral Mortgage, p. 7.) The Debtor and Pelican discussed a possible payment moratorium but could not agree on the terms, and on October 30, 1989, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District of Louisiana.

On November 21, 1989, Pelican filed its motion for adequate protection and sequestration of the rents. Pelican argued that it had a right to adequate protection based on the rental assignment clause contained in the collateral mortgage, the Assignment of Rents and Leases dated April 19, 1985, and the Collateral Assignment of Rents and Leases dated November 16, 1987. Pelican asserted that its interest in the rents was perfected upon the Debtor's default, and in the alternative, Pelican argued that it perfected its interest post petition when it moved for adequate protection and sequestration of the rents. As the holder of a perfected secured interest in the rents, Pelican claimed it was entitled to adequate protection, because rents by definition are cash collateral.

The Debtor, Chartier, argued that Pelican had not perfected its interest in the rents and therefore had no right to adequate protection or sequestration of the rents. The Debtor argued further, that if Pelican was held to have perfected its interest in the rents, it was not entitled to adequate protection because Pelican was adequately protected by its mortgage on the debtor's property located at 3535 Hessmer Avenue, Metairie.

The bankruptcy court rejected Pelican's argument that its interest in the rents became perfected upon default. However, the court held that Pelican had perfected its interest post petition when it filed its motion for adequate protection and sequestration of the rents. The bankruptcy court also held that Pelican was entitled to adequate protection of its interest in the rents.

The Debtor, Chartier, has appealed the order of the bankruptcy court. The issues raised on appeal are: 1) whether Pelican perfected its interest in the rents post petition by filing its motion for adequate protection and sequestration of rents, and 2) whether Pelican is entitled to adequate protection of its interest.

*Standard of Review*

This Court reviews the bankruptcy court's findings of fact under the clearly erroneous standard. *Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1252 (5th Cir.1986), (*citing* Bankruptcy Rule 8013.) The bankruptcy court's conclusions of law are reviewed *de novo. Id.* at 1252 (*citing Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1308 (5th Cir.1985)).

*Post Petition Perfection*

■ Upon Chartier's filing of a petition in bankruptcy on October 30, 1989, the automatic stay prevented any act by Pelican "to create, perfect, or enforce any lien against the property of the estate." 11 U.S.C. § 362(a)(4). Further, 11 U.S.C. § 544(a) allows Chartier, as Debtor in Possession, to assume the status of a lien creditor or bona fide purchaser and to avoid an assignment of rents that was not perfected at the time of the filing of the bankruptcy petition. *In re Casbeer,* 793

F.2d 1436, 1443 (5th Cir.1986); 11 U.S.C. § 1107.

However, under 11 U.S.C. § 362(b)(3), the filing of a petition in bankruptcy does not operate as a stay of any act to perfect an interest in property to the extent that the trustee's avoidance powers are subject to 11 U.S.C. § 546(b). Section 546(b) is as follows:

> The rights and powers of a trustee under sections 544, 545, and 549 of this title ... are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires the seizure of such property or commencement of an action to accomplish such perfection and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by law for such seizure or commencement.

Therefore, in order for Pelican to escape having its interest in the rents voided under Section 544(a), Louisiana law must "permit a creditor ... to enforce a security interest in rents against an entity [in this case Chartier as Debtor in Possession] that acquired rights to the rents before the creditor perfected." *Casbeer*, 793 F.2d at 1443; 11 U.S.C. § 546(b).

The *Casbeer* case also involved the post petition perfection of interests in rents. The Fifth Circuit found that while the general rule in Texas with respect to lien priorities was "first in time is first in right," this maxim yielded under Texas law to contractual provisions on lien priorities. *Casbeer*, 793 F.2d at 1443. In *Casbeer*, each of the deeds of trust containing rental assignment clauses either provided that any subsequent liens would be junior to the creditor's interests, or prohibited the granting of any later liens without the creditor's permission. *Id.* Thus, the court found that Texas law permitted a creditor to enforce its interests in the rents against the debtor in possession who had acquired

rights to the rents before the creditor perfected. *Id.*

The *Casbeer* court found that the creditor's motions to lift the stay and to prevent the debtor from using the rents provided sufficient notice under 11 U.S.C. § 546(b) to allow the creditor to perfect its interests in the rents post petition, effective on the date the motions were filed. *Id.* The court found that perfection of the interests in rents related back to a time before bankruptcy for the purpose of Section 546(b), but did not relate back to pre-petition for the purpose of entitlement to rents. *Id.* Thus, the Fifth Circuit held that the creditor was entitled to the rents from the day it filed its motions to lift the stay and prevent the debtor from using the rents. *Id.* at 1443–44.

Louisiana law also permits contractual provisions to alter or modify the priority of liens. *T.D. Bickham Corp. v. Hebert*, 432 So.2d 228, 231 (La.1983). Similar to the deeds of trusts in *Casbeer*, here, in the Collateral Assignment of Leases dated November 16, 1987, the Debtor, Chartier, agreed not to execute any other assignment of rents, and not to subordinate the assignment of leases to any other mortgage or other encumbrance without the creditor's permission. Further, the Collateral Mortgage containing a rental assignment clause, provides that the mortgage "shall rank equal to a vendor's lien ... and shall have priority over all other liens, privileges, encumbrances and mortgages on said property." Thus, following *Casbeer*, the Court finds that Louisiana law permits Pelican to enforce it security interest in rents against Chartier, who as debtor in possession, acquired rights in the rents prior to Pelican's perfection.

Further, the Court holds that Pelican's motion for adequate protection and sequestration of the rents provided sufficient notice under 11 U.S.C. § 546(b) to allow Pelican to perfect its interests in the rents post petition, effective on the date the motion was filed. *See Casbeer*, 793 F.2d at 1443 n. 21; *In re Gelwicks*, 81 B.R. 445, 448 (Bankr.N.D.Ill.1987) (Notice under 546(b) is sufficient if it informs the court or the

possessor of property that the creditor intends to enforce its lien in the rents).

Therefore, the Court upholds the bankruptcy court's ruling that Pelican perfected its security interest in the rents on November 21, 1989, when it filed its motion for adequate protection and sequestration of the rents.

*Adequate Protection*

■ Pursuant to 11 U.S.C. § 363(a), a perfected interest in the rents is cash collateral. *See also Casbeer,* 793 F.2d at 1443–44; *In re Consolidated Capital Income Trust,* 47 B.R. 1008, 1011–12, (D.Colo.1985); 11 U.S.C. § 552(b). Thus, Pelican's interest in the rents perfected on November 21, 1989 is cash collateral under 11 U.S.C. § 363(a). As cash collateral, Chartier's use of the rents is restricted under 11 U.S.C. § 363(c), which states:

(c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this section unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Therefore, Pelican was entitled to request the bankruptcy court to prohibit or condition Chartier's use of the rents so as to provide adequate protection of Pelican's interest in the cash collateral. 11 U.S.C. § 363(e); *In re Gaslight Village, Inc.,* 6 B.R. 871, 875 (Bankr.D.Conn.1980).

■ Chartier, as debtor in possession, has the burden of proving that adequate protection of Pelican's interests exists. 11 U.S.C. § 363(*o*). Under 11 U.S.C. § 361, adequate protection may be provided by:

1. periodic cash payments;

2. an additional or replacement lien;

3. such other relief as will result in the realization by the creditor of the "indubitable equivalent" of its interest in the property.

Chartier has made no showing that Pelican's interest in the rents is adequately protected. It has made no cash payments nor provided Pelican with an additional or replacement lien, and it is unable to provide the "indubitable equivalent" of Pelican's interest in the rents.

Instead, Chartier argues that the value of the office building, stipulated by the parties at $650,000, is not diminishing, and "adequately protects the interests of Pelican." Chartier argues that Pelican is not entitled to separate adequate protection of its interest in the rents, "because the income stream produced by the property is almost never bargained for." *See In re Triplett,* 87 B.R. 25, 27 (Bankr.W.D.Tex. 1988). The Court rejects this argument.

In *Triplett,* the debt at issue was $250,000, and was secured by property valued at $337,000. 87 B.R. at 25. The court found that the presence of this "equity cushion" provided adequate protection of the creditor's interest, and stated, "to say that the creditor expected to receive the income stream [from the property] is not appropriate where the creditor clearly has bargained for collateral of a value far in excess of the amount of the debt." *Id.* at 27.

The facts in *Triplett* are not analogous to the facts in the instant case. Here, there is no equity cushion. The outstanding balance of the debt is approximately $1.3 million, and the value of the property is $650,000. Further, Chartier has made little if any showing that the rents produced by the property were not bargained for. Unlike the creditor in *Triplett,* Gulf Federal did not receive collateral "far in excess of the amount of the debt." 87 B.R. at 27. Additionally, Pelican's interest in the rents is not solely derived from the rental assignment clause in the mortgage. The record shows that Gulf Federal, Pelican's predecessor in interest, asked for and received from Chartier, a separate Assignment of Rents and Leases dated April 19, 1985, and a Collateral Assignment of Rents and Leases dated November 16, 1987. Therefore, the Court rejects Chartier's argument that Pelican is not entitled to adequate protection on its interest in the rents.

The Court upholds the bankruptcy court's ruling that Pelican is entitled to adequate protection and sequestration of the rents. However, the bankruptcy court

did not make a determination regarding the method or amount of adequate protection that would be appropriate. Therefore, the Court remands this matter to the bankruptcy court for a determination on this issue.

Accordingly,

IT IS THE ORDER OF THE COURT that the order of the bankruptcy judge entered on July 19, 1990, granting Pelican's motion for adequate protection and sequestration of rents, be, and the same is hereby AFFIRMED.

IT IS FURTHER THE ORDER OF THE COURT that this action be REMANDED to The Bankruptcy Court for the Eastern District of Louisiana to determine the method and amount of adequate protection that is appropriate.