In re **BALDWIN BUILDERS, and Baldwin Building Contractors, Debtors.**

**Village Nurseries dba Southern Counties Landscape, Appellant,**

v.

**David Gould, Chapter 11 Trustee for Baldwin Builders; New Millennium Homes, LLC, Appellees.**

BAP No. CC–97–1830–BRiJ.

Bankruptcy Nos. ND 95–13057 RR, ND 95–13508 RR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 24, 1998.

Decided March 12, 1999.

Karen L. Grant, Grant & Hurlbett, Santa Barbara, CA, for Village Nurseries, appellants.

Rodger M. Landau, McDermott, Will & Emery, Los Angeles, CA, for David Gould, Trustee, appellees.

Before: BRANDT, RIMEL [1], and JONES, Bankruptcy Judges.

**Opinion**

BRANDT, Bankruptcy Judge.

Pre-petition, Village Nurseries, dba Southern Counties Landscape ("SCL"), recorded a mechanic's lien against debtor's real property. Under California law, a foreclosure action must be commenced on a mechanic's lien within 90 days of recording, or the lien is null and void. Post-petition, SCL filed a foreclosure action on the recorded mechanic's lien, but did not serve the complaint. SCL later recorded a second mechanic's lien and filed a second foreclosure action, again without serving the complaint.

After a court-approved sale of the subject real property, SCL moved to compel the trustee to provide a replacement lien. The bankruptcy court denied the motion, finding that SCL's liens were invalid because its foreclosure complaints were void as violations of the automatic stay, and because SCL had failed to give the notice required to maintain or continue the perfection of its liens. SCL appeals. We AFFIRM.

---

**1.** Hon. Whitney Rimel, Bankruptcy Judge for the Eastern District of California, sitting by designation.

## I. BACKGROUND

The facts are undisputed. On 24 March 1995, Appellant Village Nurseries L.P., dba Southern Counties Landscape ("SCL"), entered into a subcontract with Debtors Baldwin Building Contractors, dba the Baldwin Company, and Baldwin Builders (collectively "debtor" or "Baldwin") to provide landscaping and irrigation systems on Toyon Park, a parcel of real property located in Anaheim Hills, California. On 13 April 1995, SCL served on Baldwin a preliminary notice of mechanic's lien, in accordance with Cal.Civ.Code §§ 3097 and 3098.

Baldwin filed for relief under Chapter 11 of the Bankruptcy Code [2] on 18 July 1995. On 27 July SCL representatives met with its primary lender. James and Al Baldwin, principals of the debtors, were also two of the four limited partners in SCL. They attended the meeting, during which SCL representatives assured the bank that SCL would pursue its lien rights against the debtors' projects. The next day, SCL recorded a mechanic's lien in Orange County against the Toyon Park property.

On 9 October 1995, the president of Village Envirocorp, Inc., ("Village") the corporate general partner of SCL, sent an intercompany memorandum to Al and Jim Baldwin, which stated:

> In order to satisfy the Bank of California and protect our rights as a secured creditor, we must perfect the Mechanics Liens we have recorded against Baldwin projects.
> The least expensive way for us to proceed is to use Greenbaum and Ferentz, our regular collection attorney. Since Martin Greenbaum already represents you for Village, he requires a letter of authorization to sue your other entities.

A draft authorization letter was attached to the memo. That same day, Village's board of directors met by conference call in which Al and Jim Baldwin participated. At the meeting the board unanimously approved the employment of the Greenbaum firm to pursue perfection of the mechanics' liens recorded against Baldwin.

On 25 October 1995 SCL filed a complaint in Orange County Superior Court to foreclose on its Toyon Park lien. SCL did not serve the complaint or otherwise pursue the lawsuit. SCL filed its proof of claim in the Baldwin bankruptcy on 26 January 1996, listing a secured claim of $1,128,733.76 and attaching a listing of the various mechanics' liens held by SCL, including the one on Toyon Park.

SCL continued work at Toyon Park until May 1996, when David Gould ("Gould" or "trustee") was appointed Chapter 11 trustee. On 20 May SCL recorded a second mechanic's lien against Toyon Park, and on 17 July it filed a second complaint in Orange County Superior Court to foreclose on the second lien. Again, SCL did not serve the complaint or otherwise pursue the lawsuit.

In August the trustee moved for approval of a settlement with Shea Homes Limited Partnership calling for, among other things, the transfer of Toyon Park free and clear to the City of Anaheim. As no consideration was to be received in the transfer, the trustee proposed to give lienholders replacement liens on other real property owned by the debtors. The court granted the trustee's motion. Despite repeated requests, the trustee refused to provide SCL a replacement lien for Toyon Park. On 2 June 1997, SCL moved to compel the trustee and the debtors to comply with certain allocation orders and to provide SCL with a replacement lien on Toyon Park. The trustee responded, questioning the validity of SCL's lien.

At the hearing on SCL'S motion, the court found that SCL's post-petition foreclosure complaints were void as violations

---

**2.** Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C., and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. "FRCP" references are to the Federal Rules of Civil Procedure.

of the automatic stay. The court concluded that § 546(b)'s notice requirement had not been satisfied by Al and Jim Baldwins' participation in the meetings of the board of directors or with the bank, nor by their receipt of the interoffice memo, as these were all undertaken in their capacities as SCL limited partners. Nor did SCL's proof of claim, filed more than 90 days after the recording of the first lien and prior to the recording of the second lien, provide timely notice of the first or any notice of the second.

The bankruptcy court denied SCL's motion, entering a written order on 27 October 1997. SCL timely appealed.

## II. ISSUES

A. Whether SCL's complaints were void as violations of the automatic stay;

B. Whether SCL satisfied § 546(b)'s notice requirement by Al and Jim Baldwins' presence at meetings and their receipt of internal SCL correspondence, or by SCL's recording of its mechanics' liens, or by the filing of its foreclosure complaints, or by its filing of a proof of claim; and

C. Whether SCL is entitled to equitable relief.

## III. STANDARD OF REVIEW

We review the bankruptcy court's conclusions of law and questions of statutory interpretation de novo, *In re Southern California Plastics, Inc.*, 208 B.R. 178, 180 (9th Cir. BAP 1997) *rev'd on other grounds*, 165 F.3d 1243 (9th Cir.1999), and factual findings for clear error. Rule 8013. When there are two permissible views of the evidence, the trial judge's choice between them cannot be clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

## IV. DISCUSSION

Initially, we note that SCL argues that its course of action, filing but not serving its lien foreclosure complaints, is recommended by the leading California treatise on the subject, M.E. and H.M. Marsh, *California Mechanics' Lien Law* (6th ed.1996). Indeed, § 4.57 of that work does so recommend, but we must apply the statute and binding authority—while secondary authority may be helpful or persuasive, it is no more than that.

We do not find Marsh convincing: first, as the authors refer only to "perfection," and not to "maintenance" or "continuation of perfection," it is not evident that the authors have considered the effects of the 1994 amendment to § 546(b), when Congress added "maintenance or continuance of perfection" to the § 546(b) exception[3]. Next, although they treat the commencement of an action as "perfection" against other claimants, they do not address the Ninth Circuit's analysis in *In re Hunters Run Ltd. Partnership*, 875 F.2d 1425, 1427–1429 (1989), concluding that commencing the action under the parallel Washington statute was enforcement. Finally, the authors do not address what may suffice as notice under § 546(b).

A. *The automatic stay.*

■ Section 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate." Actions violating the stay are void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992). However, § 362(b)(3) excepts from the automatic stay

> any act to perfect, or to maintain or continue the perfection of, an interest in property *to the extent that the trustee's rights and powers are subject to such perfection under § 546(b)*. . . .

(emphasis added). Section 546(b)(2) in turn provides that, where state law requires "commencement of an action to accomplish . . . perfection, or maintenance or continuation of perfection of an interest in property" and the action has not been

---

**3.** Section 204 of the Bankruptcy Reform Act of 1994, P.L. No. 103–394.

commenced prepetition, "perfection of such interest *shall* be maintained or continued, by giving notice within the time fixed by such law for ... such commencement." (emphasis added).

In *Hunters Run,* John Hand filed a mechanic's lien against certain real estate for work performed. The property was transferred to Hunters Run L.P., which later declared bankruptcy. After the property was sold free and clear of liens, Hunters Run objected to Hand's claim against the sale proceeds, as he had not filed a foreclosure action. Hunters Run argued that, under Washington law, the foreclosure action was necessary to perfect Hand's lien and that, because the action was necessary to perfect, it was not subject to the automatic stay. Therefore, Hunters Run argued, the time to file the action was not extended by § 108. The Ninth Circuit rejected this argument. According to the court,

> [c]ommencement of foreclosure proceedings ... is not an element of 'perfection' exempted from section 362's stay by section 546(b); rather, it is 'enforcement' which remains stayed by section 362. Consequently, section 108(c) applies to toll the enforcement period....

*Hunters Run,* 875 F.2d at 1428.

As noted above, when the Ninth Circuit decided *Hunters Run,* only actions to perfect were exempt from the automatic stay under § 362(b)(3).

SCL argues that, because of the 1994 amendments, *Hunters Run* is no longer controlling, and that the foreclosure suits did not violate § 362(a)(4), because they were actions to maintain or continue perfection of a lien. While we agree that the filing of a foreclosure suit is necessary under California law to maintain the lien, it does not follow that a foreclosure suit is no longer prohibited by the automatic stay. Nothing in the 1994 amendment suggests that *Hunters Run's* characterization of a foreclosure suit as an enforcement action no longer applies.

The California mechanic's lien statute parallels the Washington statute at issue in *Hunters Run:* both require a foreclosure suit to enforce the lien. Perfection by notice is provided for in the California mechanic's lien statute at Cal.Civ.Code § 3115 in Article 3, while Cal.Civ.Code § 3144, which requires the lien claimant to commence an action to foreclose the lien within 90 days or lose its lien, appears in Article 7, entitled "Enforcement of a Lien."

■■■ Amended §§ 362(b) and 546(b) govern the situation presented here, and we are to follow statutes as they are written. *In re Berg,* 188 B.R. 615, 621 (9th Cir. BAP 1995), *aff'd,* 121 F.3d 535 (9th Cir.1997). "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). We see nothing ambiguous in the words "maintenance or continuance of perfection," nor anything incoherent or inconsistent in enforcing the notice requirement. Under California law, the filing of a foreclosure suit, an enforcement action, is required to maintain the perfection of a lien: if no suit is timely filed, the lien becomes void. Section 546(b) unambiguously mandates that, if commencement of an action is required to maintain or continue perfection, notice shall be given instead.

The mandatory nature of § 546(b)'s notice requirement was recognized in several cases decided prior to the 1994 amendments, when only actions to perfect were encompassed by that statute:

> If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by

such law for such seizure or commencement.

1987 version of § 546(b), quoted in *In re Hunters Run*, 875 F.2d at 1428. Under this provision, the Fifth, Seventh, and Tenth Circuits concluded that, although § 362(a)(4) generally stayed any act to create, perfect, or enforce a lien, liens could be perfected post-petition under § 362(b)(3), but only by notice pursuant to § 546(b). *In re Fullop*, 6 F.3d 422, 430 (7th Cir.1993); *Virginia Beach Fed. Sav. and Loan Ass'n v. Wood*, 901 F.2d 849, 852 (10th Cir.1990); *Casbeer v. State Fed. Sav. & Loan Ass'n of Lubbock (In re Casbeer)*, 793 F.2d 1436, 1443 (5th Cir.1986).

In *Roofing Concepts, Inc. v. Kenyon Indus., Inc. (In re Coated Sales, Inc.)*, 147 B.R. 842 (S.D.N.Y.1992), the court acknowledged the dilemma faced by statutory lien claimants who had not yet filed foreclosure actions to perfect their liens pre-petition:

> The Code's sanctioning of post-petition perfection according to the method prescribed by state law presents a quandary in this case. While Rhode Island law predicates perfection on the filing of an enforcement action, the Code voids all such actions as violations of the automatic stay. Thus, to give meaning to the Code sections permitting post-petition perfection of liens, the Code must provide an alternative to Rhode Island's method of perfecting a lien in the post-petition period.
>
> *Section 546(b) addresses this issue ... [it] compels a creditor to perfect an interest in the post-petition period by providing notice.*

*Id.* at 845–46 (emphasis added; citations omitted).

The only contrary authority is *In re McCord*, 219 B.R. 251, 252–253 (Bankr. E.D.Ark.1998), decided after the 1994 amendments, but dealing only with perfection. In that case, the court concluded that because Arkansas law provides for the filing of a complaint and notice to perfect a mechanic's lien, § 362(b)(3) renders the filing and serving of the complaint a valid method of perfection that does not violate the stay. *McCord*'s persuasive value here is questionable for three reasons. First, the Arkansas statute, construed but not quoted in *McCord*, apparently allows the filing and service of a complaint to *perfect* a lien, in contrast to California's and Washington's statutes, which prescribe commencement of an action to *enforce* a lien. *See Hunters Run*, 875 F.2d at 1428 (construing Washington statute). More importantly, the *McCord* court did not consider § 546(b)'s mandatory notice requirement, which applies by its terms even when the commencement of an action is required to perfect a lien. Finally, the Eighth Circuit case relied upon in *McCord* as support for the assertion that the filing and service of the complaint do not violate the stay, *Kaler v. Community First Nat'l Bank (In re Heitkamp)*, 137 F.3d 1087, 1089 (8th Cir.1998), merely recites that a statutory lien may be perfected post-petition, without analyzing the method for accomplishing that perfection or acknowledging 546(b)'s notice requirement.

■ We are to construe exceptions to the automatic stay narrowly to further the purpose of the stay. *In re Glasply Marine Industries, Inc.*, 971 F.2d 391, 394–95 (9th Cir.1992). Treating a foreclosure suit as an enforcement action prohibited by the automatic stay furthers the "fundamental objectives of the automatic stay. These objections include maintaining a status quo, protecting the estate against a multiplicity of lawsuits in various forums, and preserving the relative priorities of creditors, pending a distribution of estate assets." *In re Southern California Plastics*, 208 B.R. at 182 (citations omitted).

Nothing in the 1994 amendments to §§ 362 and 546 suggests the Ninth Circuit's characterization of a suit as enforcement, not perfection, is no longer valid. Given § 546, which mandates an alternative to commencing an action, and the rule of narrow construction of exceptions to the

automatic stay, there is no warrant for deviating from *Hunters Run*'s holding that commencing a mechanic's lien foreclosure action violates the automatic stay. As SCL's lien foreclosure actions were stayed as enforcement actions, their only purpose was to maintain or continue perfection, which § 546(b) requires be done by notice.

B. *Notice.*

■ When commencement of an action is required to perfect or to maintain or continue perfection, a claimant is instructed by § 546(b)(2) to accomplish such perfection or continuance or maintenance of perfection by "giving notice." The Code does not specify what the notice must contain or to whom it should be given, nor that the notice must be filed in the bankruptcy court.

There are no Ninth Circuit cases dealing with the sufficiency of notice under § 546(b). In the Seventh Circuit, "notice is sufficient if it informs the court or the possessor of the property that the creditor intends to enforce his lien. . . ." *Fullop,* 6 F.3d at 430 (citations omitted). Prior to *Fullop,* courts generally held that notice under § 546(b) required something to be filed in the bankruptcy court. *Coated Sales,* 147 B.R. at 846; *In re Sampson,* 57 B.R. 304, 309 (Bankr.E.D.Tenn.1986). While other cases did not explicitly propound this conclusion, they implicitly supported it—virtually all reported cases finding notice sufficient involve the filing of pleadings in the bankruptcy courts. *See In re C.G. Chartier Constr., Inc.,* 126 B.R. 956, 959 (E.D.La.1991) (motion for adequate protection and sequestration of rents); *First Am. Bank of Va./WNB Corp. v. Harbour Pointe Ltd. Partnership (In re Harbour Pointe Ltd. Partnership),* 132 B.R. 501, 504 (Bankr.D.D.C.1991) (adversary proceeding requesting a declaration that debtor's rents were the bank's cash collateral); *Matter of Rief,* 83 B.R. 626, 629 (Bankr.S.D.Iowa 1988) (application for sequestration of rents and profits); *In re*

*Gelwicks,* 81 B.R. 445, 448 (Bankr.N.D.Ill. 1987) (motion for relief from automatic stay); *In re Morning Star Ranch Resorts,* 64 B.R. 818, 820 (Bankr.D.Colo.1986) (complaint to prohibit use of rents); *Sampson,* 57 B.R. 304, 309 (complaint to determine validity of lien in rents); *In re Fluge,* 57 B.R. 451 (Bankr.D.N.D.1985) (objection to the trustee's notice of intent to lease the property); *In re Zerger,* 35 B.R. 42, 43 (Bankr.D.Or.1983) (service on trustee and debtor of motion for relief from stay to pursue state court foreclosure of construction lien); *In re Michigan Ave. Nat'l Bank,* 2 B.R. 171, 185–86 (Bankr.N.D.Ill. 1980) (request for relief from stay or appointment of a receiver).

Some courts have found various filings in bankruptcy court inadequate. *See Matter of Village Properties, Ltd.,* 723 F.2d 441, 446–47 (5th Cir.1984) (motion for relief from stay to commence foreclosure insufficient). *But see In re National Real Estate Ltd. Partnership–II,* 104 B.R. 968 (Bankr.E.D.Wis.1989) (notice of claim to rents served on debtor was sufficient § 546(b) notice; no indication whether the notice was filed with the court).

*Fullop* departs from the holdings of these cases. In that case, the creditor bank held a lien in post-petition profits from working interests under an oil and gas lease. Post-petition, the bank stopped remitting proceeds from the sale of the oil and began paying directly the expenses for the operation of the working interests. According to the Seventh Circuit, these actions "notified Fullop and the bankruptcy court that the Bank was taking affirmative action to enforce its lien" and thus perfected under § 546(b) the bank's lien on the post-petition proceeds from the oil runs. *Fullop,* 6 F.3d at 430–31. It is not clear how this action informed the bankruptcy court of the bank's intentions, as the adversary proceeding dealing with these issues was not commenced until three years later. See *Fullop,* 6 F.3d at 426. *Fullop* appears to be the only reported case indicating that something less than

a filing with the bankruptcy court will satisfy § 546(b)'s notice requirement, although one case suggests (in dicta) that prepetition recordation of a security interest in property and rents would be sufficient. *Federal Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assoc. Ltd. Partnership*, 153 B.R. 204, 213 (N.D.Ill.1993).

■ Even under *Fullop*, the creditor must take some affirmative action to comply with the notice requirement. According to the Seventh Circuit,

> When the Bank stopped remitting to Fullop the excess proceeds from the sale of the oil and began paying the expenses for the operation of the working interests, it not only notified Fullop and the bankruptcy court that the Bank was taking *affirmative action* to enforce its lien, but also effectively removed Fullop from possession of the working interest and never let the trustee take possession when the proceeding was converted to a Chapter 7 liquidation.

*Fullop*, 6 F.3d at 430–31 (emphasis added). The cases suggest that, at a minimum, the action must be calculated to notify the holder of the property, be it the debtor or the trustee, that the lienholder intends to enforce its lien.

*Coated Sales* is analogous to this case. Similar to the California statute, Rhode Island law requires, among other things, the filing of a petition in state court within 120 days of the filing of a notice, or the lien will be "void and wholly lost." *Coated Sales*, 147 B.R. at 844. Creditor Roofing Concepts took several post-petition actions to perfect a mechanic's lien against property owned by the debtor: it filed a notice of intention to claim a mechanic's lien, recorded the mechanic's lien, filed a notice of lis pendens, and filed a petition to enforce the mechanic's lien. In addition, the creditor filed a secured claim in the bankruptcy court within 120 days of filing its notice of intention.

The court in *Coated Sales* concluded that none of the filings in Rhode Island courts could constitute notice under § 546(b), because that provision requires notice to be filed with the bankruptcy court (citing *In re Sampson*, 57 B.R. 304, 309 (Bankr.E.D.Tenn.1986)). Moreover, the petition to enforce the lien and notice of lis pendens, regardless of where they were filed, were enforcement actions prohibited by the automatic stay and as such were void. However, the secured claim, filed within the statutory period for filing an enforcement action, was held to be sufficient notice under § 546(b). 147 B.R. at 845–846.

SCL here argues that it provided notice in four ways:

— First, Al and James Baldwin were present at meetings discussing the enforcement of its liens and received copies of memoranda indicating SCL intended to pursue its liens.

— Second, SCL asserts that the debtor received notice that the liens were recorded.

— Third, SCL argues that the Baldwins had actual knowledge and notice that SCL had filed the foreclosure action in state court.

— Finally, SCL asserts that the filing of its secured claim was sufficient.

■ That the Baldwins received a memorandum requesting a waiver of conflicts and were present at meetings when SCL decided to hire a law firm to pursue the liens against the Baldwin property were, as found by the bankruptcy court, happenstance, and were at most preliminary steps, not affirmative actions calculated to inform the debtor that SCL intended to enforce its lien rights. Additionally, the bankruptcy court found that whatever notice the Baldwins got was in their capacities as limited partners in SCL. Although SCL quarrels with these findings, it has neither shown clear error, nor even that the record evidences the Baldwins, in any capacity, actually received notice of the commencement of the actions.

The recordings of the mechanic's liens were not sufficient, under California law, to continue the lien rights beyond 90 days after their filings, and the foreclosure complaints were void as violations of the automatic stay, as discussed above.

■■■ Finally, SCL's proof of claim was filed after the expiration of California's 90-day statutory period for commencing a foreclosure action on the first lien, while § 546 requires notice to be given within the time fixed for the commencement of an action under state law. Additionally, the claim was filed before the recording of the second mechanic's lien and thus was not notice of that lien.

As none of SCL's actions satisfies the notice requirements of § 546(b), we need not decide whether filing in the bankruptcy court is required.

### C. Section 108(c).

Section 108(c) provides that "if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until ... 30 days after notice of the termination or expiration of the stay...."

SCL argues that, if the commencement of a foreclosure suit violated the automatic stay, then § 108(c) tolls the 90-day period within which it must file the action. The only reference to § 108(c) in the pleadings below is a reference in SCL's reply memorandum to *Hunters Run*'s holding, 875 F.2d at 1429, that the section tolled the statutory enforcement period governing the mechanic's lien, and the issue was neither explicitly ruled upon by the bankruptcy court nor argued below.

■■■ As we are not here considering a question regarding enforcement of SCL's assorted liens in a non-bankruptcy forum after the termination of the automatic stay, and because the issue was not presented to the bankruptcy court, we need not, and do not, address it. *In re Moses*, 215 B.R. 27, 35 n. 11 (9th Cir. BAP 1997); *In re Bakersfield Westar Ambulance*, 123 F.3d 1243, 1248 (9th Cir.1997).

### D. Equity.

■■■ SCL's final argument is that it took all actions required under state law to perfect its lien, and that even though the foreclosure actions violated the stay, the trustee should be estopped from contending the liens are invalid because he has suffered no prejudice. The trustee counters that even if equitable remedies are available against a trustee's claim, which is questionable, there is no reason to apply an equitable remedy to invalidate application of the relevant bankruptcy law, as he has never taken an inconsistent position in this litigation.

■■■ Nothing in the record or case law suggests an equitable remedy is appropriate, when the Code provides a mandatory method for maintaining perfection that SCL did not follow. "Equity may not be invoked to defeat clear statutory language, nor to reach results inconsistent with the statutory scheme established by the Code." *Committee of Creditors Holding Unsecured Claims v. Koch Oil Co. (In re Powerine Oil Co.)*, 59 F.3d 969, 973 (9th Cir.1995) (internal quotations and citations omitted).

Further, as SCL has not asserted this is a solvent estate which will pay unsecured creditors in full, the prejudice to the trustee as their representative is apparent.

## V. CONCLUSION

SCL's commencement of foreclosure suits to maintain its liens were enforcement actions prohibited by the automatic stay, and therefore void, because SCL could have given notice to preserve its lien rights. None of the actions taken by SCL was an affirmative action calculated to notify the debtor or the trustee of its intent to enforce its liens. Finally, we may not

equitably disregard applicable Code provisions. We AFFIRM.